# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### Portland Division

THOMAS W. MONTGOMERY, III,

      Plaintiff,

v.

CORELOGIC RENTAL PROPERTY
SOLUTIONS, LLC; RP ON-SITE, LLC;
SAWMAT, LLC f/k/a HYGENICSDATA,
LLC; EQUIFAX, INC., as successor in
interest to SAWMAT, LLC f/k/a
HYGENICSDATA, LLC; and HD
INFORMATION, LLC, as successor in
interest to SAWMAT, LLC f/k/a
HYGENICSDATA, LLC,

      Defendants.

Civil Action No. 3:22-cv-00474-HZ

## AMENDED COMPLAINT

COMES NOW the Plaintiff, Thomas W. Montgomery, III, by Counsel, and for his Complaint against CoreLogic Rental Property Solutions, LLC ("CoreLogic"); RP On-Site, LLC ("On Site"); HygenicsData, LLC ("HygenicsData"); Equifax, Inc., as a successor in interest to SawMat, LLC ("SawMat"), formerly known as HygenicsData, LLC ("HygenicsData"); and HD Information, LLC, as a successor in interest to SawMat, LLC ("SawMat"), formerly known as HygenicsData, LLC ("HygenicsData"); he states as follows:

## PRELIMINARY STATEMENT

1.     This is an action for statutory and punitive damages, costs, and attorneys' fees brought under 15 U.S.C. §§ 1681a–x (the Fair Credit Reporting Act or "FCRA").

2.     Though the Act has "credit" in the name, the FCRA governs a host of information used to make decisions regarding eligibility for things like jobs and, as pertinent here, housing.

The FCRA requires that companies like the Defendants—which sell employment and/or background check reports that have a serious and decisive impact on the ability of consumers to obtain employment and/or housing opportunities—follow reasonable procedures to assure the maximum possible accuracy of the information they report. Congress described these obligations placed on consumer reporting agencies as "grave responsibilities." 15 U.S.C. § 1681.

3.      Chief among the FCRA's consumer-oriented protections is its transparency provision, which requires that consumer reporting agencies ("CRAs") like Defendants turn over, upon request, all information in a consumer's file, including sources of the information. 15 U.S.C. § 1681g.

4.      Being able to learn the information CRAs trade about them arms consumers with the knowledge and ability to correct problems like those that plague consumers like Plaintiff—the reporting of inaccurate information.

5.      Plaintiff brings a Section 1681g claim against Corelogic because, after learning that Defendant, RP On-Site, LLC created an inaccurate report about him for a potential landlord, he wrote to Corelogic and asked for his full consumer file, commonly known as a "file disclosure."

6.      Corelogic failed to comply with Section 1681g's disclosure requirement, erecting unreasonable barriers before it would provide Plaintiff with his disclosure and, once Corelogic did provide the disclosure, it improperly withheld information it possessed about Plaintiff.

7.      Plaintiff brings a Section 1681g claim against SawMat because, after he discovered that Defendant, RP On-Site, LLC created an inaccurate report about him for a potential landlord, he wrote SawMat and requested his full consumer file, commonly known as a "file disclosure." Plaintiff brings this same claim against Equifax, Inc. and HD Information LLC as the successors in interest to SawMat.

8.      SawMat failed to comply with Section 1681g's disclosure requirement entirely as it did not provide Plaintiff with his disclosure, or respond to Plaintiff's request at all. Sawmat was eventually purchased by HD Information LLC, which was then purchased by Equifax, Inc., transferring Plaintiff's claim against Sawmat to HD Information and Equifax.

9.      Plaintiff brings a Section 1681e(b) claim against On-Site for its failure to follow reasonable procedures to assure the maximum possible accuracy of the information it reports. On-Site failed to meet its statutory obligations, and despite knowing that its underlying data and the matching algorithms that selected records for inclusion into consumer reports had serious deficiencies, it continued to sell reports anyway, to the detriment of consumers like the Plaintiff.

10.     Plaintiff brings a Section 1681e(b) claim against HygenicsData, HD Information and Equifax for SawMat's failure to follow reasonable procedures to assure the maximum possible accuracy of the information they report. SawMat provided inaccurate information about Plaintiff to On-Site. SawMat failed to meet its statutory obligations, and despite knowing that its underlying data and the matching algorithms that selected records for inclusion into consumer reports had serious deficiencies, it continued to sell reports anyway to the detriment of consumers like the Plaintiff.

JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as noted in Defendant RP On-Site, LLC's Notice of Removal. (ECF 1 ¶ 4.)

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

PARTIES

13.     The Plaintiff is a natural person residing in Oregon, and at all times relevant was a "consumer" as defined by 15 U.S.C. § 1681a(c).

14.    CoreLogic is a foreign corporation doing business in the State of Oregon.

15.    CoreLogic is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f). CoreLogic is regularly engaged in assembling, evaluating, and disbursing consumer information to furnish consumer reports to third parties as defined by 15 U.S.C. § 1681a(d).

16.    Corelogic disburses such consumer reports to third parties under contract for monetary compensation.

17.    RP On Site, LLC is a foreign corporation doing business in the State of Oregon.

18.    On Site is a "consumer reporting agency" as defiend by 15 U.S.C. § 1681a(f).  On Site is regularly engaged in assembling, evaluating, and disbursing consumer information to third parties as defined by 15 U.S.C. § 1681a(d).

19.    Upon information and belief, On Site disburses such consumer reports to third parties under contract for monetary compensation.

20.    SawMat is a foreign corporation formerly doing business in the State of Oregon.

21.    SawMat was a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f). SawMat was formerly engaged in assembling, evaluating, and disbursing consumer information to third parties as defined by 15 U.S.C. § 1681a(d).

22.    Upon information and belief, SawMat disbursed such consumer reports to third parties under contract for monetary compensation.

23.     Non-Party Appriss purchased SawMat after the incidents as to Plaintiff described above and before the filing of this lawsuit. It then renamed SawMat "HD Information LLC," and sold HD Information LLC to Equifax, Inc. With that purchase, Equifax assumed the liabilities of SawMat and therefore HD Information LLC, including Plaintiff's FCRA claims as alleged herein.

24.     Equifax, Inc. is the parent company of consumer reporting agency Equifax

Information Services, LLC.

## FACTUAL ALLEGATIONS

### *Section 1681e(b) of The Fair Credit Reporting Act Requires Substantive Investigations*

25.     "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer

reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement

of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress

adopted a variety of measures designed to insure that agencies report accurate

information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In

recognition of the critical role that CRAs play in the credit markets and the serious consequences

borne by consumers because of inaccurate information disseminated in consumer credit reports

prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties

of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v.*

*Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at \*4 (E.D. Va. Mar.

18, 2011).

26.     "Section 1681e(b) sets forth the CRAs' overall du[t]y:

(b) Accuracy of report. Whenever a consumer reporting agency prepares a
consumer report it shall follow reasonable procedures to assure maximum possible
accuracy of the information concerning the individual about whom the report
relates."

*Burke*, 2011 WL 1085874, at \*4.

27.     As the Fourth Circuit explained in *Johnson v. MBNA*:

The key term at issue here, "investigation," is defined as "[a] detailed inquiry or
systematic examination." Am. Heritage Dictionary 920 (4th ed. 2000); see
Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a
searching inquiry").

357 F.3d 426, 430 (4th Cir. 2004).

28.     Further, as the CRA Defendants are aware, courts have held that even though the term "investigation" is not used in § 1681e(b), it is clear that Defendants have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§ 1681e(b) and § 1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

29.     It has long been the law – since 1970 in fact – that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

### RP On Site and HygenicData Fail to Accurately Report Consumer Information

30.     Mr. Montgomery is a graduate student who, at the time of the complaint, was seeking housing in the Portland, Oregon area.

---

[1] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

31.     The Plaintiff chose to apply to an apartment complex, Ladd, in the downtown Portland area because of its proximity to his school, the availability of parking, and the convenience of nearby grocery stores and public transportation.

32.     The Plaintiff submitted his application to Ladd on around May 17, 2020, which in turn ordered from On Site a background report on Plaintiff.

33.     Through investigation, Plaintiff was able to determine that On Site had purchased a report from SawMat and provided a report dated May 17, 2020 to Ladd.

34.     On or about May 18, 220, Plaintiff received an emailed copy of his On Site background report.

35.     After reviewing the information in this report, Plaintiff discovered that there was damaging records that had been wrongfully attributed to him, including a felony conviction in the state of Oklahoma for assault on a police officer.

36.     Plaintiff has never been charged with or convicted of any felony.

37.     Plaintiff disputed the inaccuracies with On Site soon after viewing his report.

38.     Concerned by the false information in his rental report, the Plaintiff sent letters to multiple CRAs requesting copies of all of the information they had about him that they would sell as part of his credit report.

39.     Defendants failed to use the *full* identifying information to match the records of the felon "Tommy Montgomery, Jr." to Plaintiff, Thomas Montgomery, III.  Defendants mixed the file of Plaintiff and "Tommy Montgomery, Jr." failing to match the full name and that of the suffix. Plaintiff is Thomas Montgomery, III and the felon listed on the report provided by On-Site is Tommy Montgomery, Jr.  In addition, the criminal record that was reported within Plaintiff's

background report was regarding an individual with criminal records in Oklahoma which Plaintiff has no connection.

40.     Both On-Site and SawMat's standard practice is to use only partial matching and not full identifying information in the preparation of a consumer's report.

41.     Both On-Site and SawMat did not require a match to Plaintiff's full identifying information such as the Plaintiff's full first, middle, last name and suffix prior to preparing the report regarding Plaintiff.

42.     Defendants do not use a reasonable number of identifiers that would prevent the information belonging to one consumer from appearing in another consumer's background report.

43.     Defendants' reporting of the inaccurate information concerning Plaintiff was not accidental nor a result of simple negligence but instead a result of deliberate disregard and flawed policies and procedures.

### *Corelogic Fails to Provide Consumer Disclosure*

44.     Plaintiff sent a letter to Corelogic requesting his FCRA-mandated file disclosure on around June 4, 2020.

45.     In his letter to Corelogic, the Plaintiff included all of the information necessary for identification, including his full name, address, the last four digits of his Social Security Number, his date of birth, and a photocopy of his driver's license.

46.     Corelogic responded to Plaintiff with a July 7, 2020 letter, in which Corelogic acknowledged the receipt of Plaintiff's consumer file disclosure request.

47.     Rather than providing the Plaintiff with the information that he was entitled to under the FCRA, Corelogic demanded that the Plaintiff provide more information in order to supposedly process his request.

48.     Corelogic's demands for further documentation included the Plaintiff's complete Social Security Number or Individual Taxpayer Identification Number, proof of address, and verification of the name and current address that he had already provided.

49.     Corelogic's response did not contain "all information in the [Plaintiff's] file at the time of the request," as required by 15 U.S.C. § 1681g(a)(1).

50.     Corelogic's response also did not contain "the sources of the information," as required by 15 U.S.C. § 1681g(a)(2).

51.     Corelogic's response also did not contain the "identification of each person . . . that procured a consumer report" about the Plaintiff for employment purposes within the preceding 2-year period, or for any other purpose during the preceding 1-year period, as required by 15 U.S.C. § 1681g(a)(3)(A).

52.     In short, Corelogic's s response entirely failed to comply with 15 U.S.C. § 1681g.

53.     Instead, Corelogic responded by sending Plaintiff a form requesting more information for Plaintiff to complete and return before Corelogic would agree to provide him with the disclosure required by 15 U.S.C. § 1681g.

54.     This intentionally adopted policy and procedure requiring consumers to fill out Corelogic's "More Information Request Form" as a prerequisite to obtaining the full consumer disclosure that contained all information about the consumer within Corelogic's possession, together with the sources of the information and the identity of anyone who had obtained it in the past, as contemplated by Congress, violated the Fair Credit Reporting Act.

55.     Discovery will show Corelogic implemented this artificial roadblock in order to reduce the number of disclosures that it would send out, and accordingly, the number of disputes that it would be required to process, investigate, and respond to, in an effort to save money.

56.     Corelogic violated 15 U.S.C. § 1681g by failing to disclose to the Plaintiff all of the information contained in his consumer file at the time of the request.

57.     By requiring that Plaintiff fill out an additional form, CoreLogic deprived the Plaintiff of his consumer report and its valuable information despite the requirements of the FCRA and according to Corelogic's standard practices and procedures, thereby causing the Plaintiff to suffer informational injury.

58.     Corelogic's placing of the artificial, onerous roadblock into the file-request process unfairly hindered Plaintiff's ability to learn potential sources of inaccurate information being reported about him.

59.     The FCRA provides consumer like Plaintiff the absolute right to learn such information, and Corelogic depriced Plaintiff of that right.

### SawMat Fails to Provide Consumer Disclosure

60.     Plaintiff sent a letter to SawMat requesting his FCRA-mandated file disclosure on or about May 2021.

61.     In this letter to SawMat, the Plaintiff included all of the information necessary for identification, including his full name, address, the last four digits of his Social Security Number, his date of birth, and a photocopy of his driver's license.

62.     SawMat did not provide the Plaintiff with a copy of his consumer file.

63.     In June 2021, the Plaintiff again requested a copy of his consumer file from SawMat, including all of the information necessary for identification.

64.     To date, SawMat has failed to provide any response to Plaintiff's requests for disclosure of his consumer file as mandated by the FCRA.

***Plaintiff Suffered Actual Harm***

65.      As a result of On Site and SawMat's reporting of the inaccurate information about

Plaintiff he has suffered damages, including, but not limited to:

   a.   Stress associated with the loss of housing;

   b.   Loss of time attempting to cure the error;

   c.   Mental anguish, stress, aggravation, and other related impairments to the enjoyment
        of life.

   d.   Stress associated with attempting to resolve this matter in the last year.

66.      Corelogic and SawMat's failure to provide Plaintiff with his file disclosure caused

him informational injury, as Congress has legislated the right to all information in a consumer's

file "upon request." There are no qualifiers in the statute that can be read to permit the erection of

barriers to obtaining such information.

67.      Plaintiff was entitled to certain information when he requested it, and Corelogic

and SawMat did not just withhold a portion of that information, they withheld all of it. In truth,

Corelogic and SawMat held Plaintiff's information hostage, requiring that he complete its unlawful

form before it would release such information to him.

68.      Nothing in Section 1681g permits Corelogic and SawMat to take this step.

***Defendants' Violations were Willful***

69.      The FCRA allows for a remedy for a "willful" violation.A willful act or violation

includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co.*

*of Am. v. Burr*, 551 U.S. 47, at 57 (2007).  A "reckless" action includes conduct whereby "the

company ran a risk of violating the law substantially greater than the risk associated with a reading

that was merely careless." *Id.* at 69.

70.     Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

71.     As detailed above, the FCRA sections at issue here, and informative guidance, have been around now for over 50 years. The language of § 1681e(b) has not changed. The FCRA's caution of Defendants' "grave responsibilities" to ensure accuracy has not changed.

## CLAIMS FOR RELIEF

### COUNT I: VIOLATION OF 15 U.S.C. § 1681e(b)
### (RP ON SITE, LLC and SAWMAT)

72.     Plaintiff realleges and incorporates paragraphs 1 through 64 above as if fully set out herein.

73.     On Site and SawMat each failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained in the consumer report that they sold regarding the Plaintiff.

74.     On Site and SawMat inaccurately attributed to Plaintiff, criminal history that did not belong to him.

75.     As a result of On Site and SawMat's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: the loss and/or delay of his rental property, loss of sleep, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

76.     The Plaintiff is entitled to recover actual and compensatory damages, including, but not limited to an amount sufficient to compensate Plaintiff for his emotional distress, time, effort,

elevated risk of harm, information injuries, and the deterrent effect on his ability to pursue other rentals and other opportunities that required a background check.

77.     Plaintiff also seeks an award of his reasonable attorneys' fees and costs incurred in the litigation of this matter, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

78.     Because On Site's and SawMat's conduct was willful, Plaintiff is entitled to uncapped punitive damages in addition to the amounts described in the previous paragraphs.

79.     Through the creation of HD Information LLC, HD Information acquired SawMat's liability for Plaintiff's claims against SawMat.

80.     Through Equifax's purchase of HD Information LLC, Equifax acquired SawMat and HD Information LLC's liability for Plaintiff's claims against SawMat and HD Information LLC.

## COUNT II: VIOLATION OF 15 U.S.C. § 1681g
### (CORELOGIC)

81.     The Plaintiff restates each allegation in the preceding paragraphs 1 through 64 as if set forth at length herein.

82.     CoreLogic violated 15 U.S.C. § 1681g(a)(1) by failing to disclose all of the Plaintiff's information that it maintained at the time Plaintiff requested it.

83.     CoreLogic violated 15 U.S.C. § 1681g(a)(2) by failing to disclose all the sources of the information maintained in the Plaintiff's file at the time of the request.

84.     CoreLogic violated 15 U.S.C. § 1681g(a)(3) by failing to identify each person that procured the Plaintiff's consumer report within the prior one or two years, as applicable, at the time of the request.

13

85.     CoreLogic's conduct, actions, and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Corelogic was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

86.     As a result of Corelogic's violations, the Plaintiff suffered damages including lack of information, the inability to determine the sources of that information, the inability to determine the identities of each person who procured his file, and the inability to determine if Corelogic or someone from whom it purchased information is the originator of the inaccurate felony information that was reported to his potential landlord.

87.     Corelogic's failure to disclose all information in its possession related to the Plaintiff, the source of this information, and the identities of each person that procured the information maintained in their database about the Plaintiff was an act or omission committed in violation of the rights conferred to the Plaintiff by Congress as set forth by 15 U.S.C. § 1681g.

88.     As a result, Corelogic is liable to the Plaintiff for statutory damages, in an amount ranging from $100 to $1,000 to be determined by the jury, as well as punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n. In the alternative, Corelogic was negligent, entitled the Plaintiff to recover actual damages pursuant to 15 U.S.C. § 1681o.

89.     Because Corelogic's conduct was willful, Plaintiff is entitled to uncapped punitive damages in addition to the amounts described in the previous paragraphs.

### COUNT III: VIOLATION OF 15 U.S.C. § 1681g
### (SAWMAT)

90.     The Plaintiff restates each allegation in the preceding paragraphs 1 through 64 as if set forth at length herein.

91.     SawMat violated 15 U.S.C. § 1681g(a)(1) by failing to disclose all of the Plaintiff's information that it maintained at the time Plaintiff requested it.

14

92.     SawMat violated 15 U.S.C. § 1681g(a)(2) by failing to disclose all the sources of the information maintained in the Plaintiff's file at the time of the request.

93.     SawMat violated 15 U.S.C. § 1681g(a)(3) by failing to identify each person that procured the Plaintiff's consumer report within the prior one or two years, as applicable, at the time of the request.

94.     SawMat was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

95.     As a result of SawMat's violations, the Plaintiff suffered damages including lack of information, the inability to determine the sources of that information, the inability to determine the identities of each person who procured his file, and the inability to determine if SawMat or someone from whom it purchased information is the originator of the inaccurate felony information that was reported to his potential landlord.

96.     SawMat's failure to disclose all information in its possession related to the Plaintiff, the source of this information, and the identities of each person that procured the information maintained in their database about the Plaintiff was an act or omission committed in violation of the rights conferred to the Plaintiff by Congress as set forth by 15 U.S.C. § 1681g.

97.     As a result, SawMat is liable to the Plaintiff for statutory damages, in an amount ranging from $100 to $1,000 to be determined by the jury, as well as attorneys' fees and costs pursuant to 15 U.S.C. §1681n. In the alternative, SawMat was negligent, entitled the Plaintiff to recover actual damages pursuant to 15 U.S.C. § 1681o.  Plaintiff intends to amend and seek a claim for entitlement to punitive damages, in an amount to be determined by the jury.

98.     Through the creation of HD Information LLC, HD Information acquired SawMat's liability for Plaintiff's claims against SawMat.

99.     Through Equifax's purchase of HD Information LLC, Equifax acquired SawMat

and HD Information LLC's liability for Plaintiff's claims against SawMat and HD Information

LLC.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Thomas W. Montgomery, III, requests that the Court enter

judgment against Defendants for: (1) for statutory, actual, and punitive damages, as pleaded herein;

(2) for attorneys' fees, litigation expenses, and costs of suit; and (3) such other or further relief,

including injunctive relief, as the Court deems proper.

**TRIAL BY JURY IS DEMANDED**

DATED this 18th day of April, 2022.

Respectfully submitted,

Thomas W. Montgomery, III,

By: s/ Justin M. Baxter
Justin Baxter, Esq.
Baxter & Baxter, LLP.
8835 SW Canyon Lane, Suite 130
Portland, Oregon 97225
(503) 297-9031
justin@baxterlaw.com

Leonard A. Bennett (*pro hac vice*)
Craig C. Marchiando (*pro hac vice*)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1A
Newport News, Virginia 23601
(757) 930-3660
(757) 930-3662 fax
lenbennett@clalegal.com
craig@clalegal.com

*Counsel for the Plaintiff*